UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY HUNTE, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 11198 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SAFEGUARD PROPERTIES MANAGEMENT, LLC, | ) | |
| and JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jeremy Hunte sued Safeguard Properties Management, LLC and JPMorgan Chase Bank, N.A., alleging that Safeguard violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and that both defendants violated state law. Doc. 1. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Docs. 19, 22. The court granted the motion and allowed Hunte to replead. Docs. 48-49 (reported at 255 F. Supp. 3d 722 (N.D. Ill. 2017)). Hunte filed an amended complaint, Doc. 58, and rather than respond to Defendants' motions to dismiss, Docs. 60, 63, he sought and was granted leave to file a second amended complaint, Docs. 71-73. Defendants again move to dismiss. Docs. 75, 78. The motions are granted; the FDCPA claims are dismissed with prejudice, and the state law claims are dismissed for want of subject matter jurisdiction.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred

1

to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Hunte's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Hunte as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

### A. Factual Background

Hunte owns real property in Momence, Illinois. Doc. 73 at ¶ 11. He entered into a mortgage agreement with Chase secured by the property. *Id*. at ¶ 12. After falling behind on his payments, Hunte decided to execute a short sale of the property and retained an attorney to help him negotiate such a sale. *Id*. at ¶¶ 16-17, 21-22. Chase ordered an appraisal of the property in connection with its approval of Hunte for "pre-foreclosure." *Id*. at ¶¶ 26-27.

On July 28, 2016, an agent of Hunte's attorney visited the property to check the mail while Hunte was out of town for work. *Id*. at ¶ 30. The mail included a letter from Chase, which Hunte's attorney also received directly, stating: "We've been notified that your property is vacant. If this is incorrect and you're still living in or maintaining the property, please contact us … . If we don't receive your response [by August 3, 2016], we'll secure the property, which may include changing the locks and winterizing it." *Id*. at ¶¶ 31-32. The letter listed "Property.Preservation@chase.com" as the contact e-mail and warned Hunte that Chase would "assess any costs related to securing and maintaining the property to [his] loan." Doc. 73-1 at 20. The letter further instructed Hunte that "[i]f the property is vacant, [Hunte] should contact [his] insurance company to find out how this may affect … coverage." *Ibid*.

2

Hunte's attorney made several unsuccessful attempts to inform Chase that Hunte had not abandoned the property. Doc. 73 at ¶¶ 33-36. After returning home on August 24, 2016, Hunte, too, attempted to inform Chase that he still lived on the property. *Id*. at ¶¶ 38-39.

Sometime after September 8, 2016, Hunte again left town for work. *Id*. at ¶ 42. On September 14, Hunte learned from a neighbor that Safeguard employees or agents had spoken with the neighbor about Hunte's property. *Id*. at ¶¶ 44-45. Safeguard is a corporation that "markets its services to mortgage companies with delinquent and defaulted borrowers." *Id*. at ¶ 5. Safeguard "advertises field services that it provides to its client, and among these services are communicating with delinquent borrowers on behalf of mortgage companies, contacting mortgagors to request that they call mortgage companies, and reporting back to mortgage companies whether it has made contact with mortgagors and regarding the condition of mortgaged properties." *Ibid*.

The neighbor told Hunte that Safeguard "had told the neighbor about the foreclosure action and to stop cutting [Hunte's] lawn because the house was being seized from [Hunte]." *Id*. at ¶ 47. Hunte returned home to discover that, at some point between September 9 and September 14, Safeguard (through its agents or employees) had, at Chase's direction, unlawfully accessed the property. *Id*. at ¶¶ 43, 58-59. Safeguard also had thrown Hunte's personal belongings into dumpsters, changed the locks on his home, winterized the plumbing, and placed signs on the property indicating that it was vacant. *Id*. at ¶¶ 49-50, 61-66. The signs read: "Notice: This property has been determined to be vacant or abandoned. This information will be reported to the mortgage servicer … If this property is NOT VACANT or ABANDONED, please call your mortgage servicer, JPMorgan Chase Bank, N.A." Doc. 73-1 at 31.

3

### B. Procedural History

Hunte's initial complaint, which like the operative complaint brought FDCPA claims only against Safeguard, alleged that "Safeguard's principal purpose is the enforcement of security interests via the use of instrumentalities of interstate commerce." Doc. 1 at ¶ 5. But the complaint *also* alleged that Safeguard's "principal purpose [was to] manage and preserve at-risk and foreclosed properties." *Id*. at ¶ 4. As explained in the court's opinion dismissing the initial complaint, familiarity with which is assumed, the complaint did not adequately allege that Safeguard was a "debt collector" as defined by 15 U.S.C. § 1692a(6), and therefore stated no viable FDCPA claim, because the statute "does not cover … dual-principal purpose entities." 255 F. Supp. 3d at 726. And while acknowledging that the initial complaint further alleged that "Safeguard regularly collects or attempts to collect defaulted consumer debts using the mails and the telephone," Doc. 1 at ¶ 6, the court held that Hunte had forfeited any argument that Safeguard was a debt collector based on that allegation by failing to press it in his opposition briefs. 255 F. Supp. 3d at 726-27.

With the initial complaint not having adequately alleged that Safeguard, the only FDCPA defendant, was a "debt collector" within the meaning of § 1692a(6), the court dismissed Hunte's FDCPA claim. Then, noting that the complaint neither alleged Hunte's or Safeguard's citizenship nor invoked the diversity jurisdiction under 28 U.S.C. § 1332, and that Hunte had instead premised jurisdiction over his state law claims on the supplemental jurisdiction under 28 U.S.C. § 1367(a), Doc. 1 at ¶¶ 1, 3, the court exercised its discretion under 28 U.S.C. § 1367(c)(3) to relinquish jurisdiction over those claims. 255 F. Supp. 3d at 724, 727. Because this was the first dismissal, the court gave Hunte an opportunity to replead. *Id*. at 727.

Hunte's amended complaint alleged that Safeguard was a "debt collector" within the meaning of § 1692a(6) on two grounds: (1) "Safeguard regularly collects or attempts to collect defaulted consumer debts using the mails and telephone," Doc. 58 at ¶ 5; and (2) "Safeguard's principal purpose is the enforcement of security interests," *id*. at ¶ 7. Defendants again moved to dismiss. Docs. 60, 63. When at the presentment hearing Hunte's counsel could not say in response to the court's questions whether Safeguard communicated with affected homeowners exclusively by posting physical notices on their properties, as opposed to through the mails or instrumentalities of interstate commerce, the court expressed concern that the amended complaint's allegation that "Safeguard regularly collects or attempts to collect defaulted consumer debts using the mails and telephone" was not properly founded. In lieu of responding to Defendants' motions to dismiss, and noting the court's "concern[] that [Safeguard] was not properly plead as a debt collector," Hunte sought leave to amend yet again. Doc. 71 at 1. That motion was granted, and Hunte filed a second amended complaint, which is the operative complaint. Docs. 72-73.

Like its predecessors, the operative complaint brings FDCPA claims only against Safeguard, and it makes yet another effort to allege that Safeguard is a debt collector under § 1692a(6). First, the complaint alleges that Safeguard's "principal purpose is … the enforcement of security interests via the use of instrumentalities of interstate commerce." Doc. 73 at ¶ 6. Second, the complaint alleges that Safeguard "regularly attempts to collect directly, or indirectly, debts owed or due or asserted to be owed or due another, namely, Chase Bank in this matter." *Id*. at ¶ 7. Like the initial complaint, the second amended complaint does not allege the citizenship of Hunte or Safeguard, and it premises jurisdiction over Hunte's state law claims only on the § 1367(a) supplemental jurisdiction. *Id*. at ¶¶ 1, 3.

**Discussion**

**I.     FDCPA Claims**

Hunte's FDCPA claims allege that Safeguard violated 15 U.S.C. §§ 1692c(b), 1692d(1), 1692e(2)(A) and (10), and 1692f and 1692f(6)(C). *Id*. at ¶¶ 75-87.  As the court's prior opinion explains, to be held liable under the FDCPA, a defendant must be a "debt collector" as defined by § 1692a(6).  *See Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA regulates only the conduct of 'debt collectors … .'"); *Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003) (noting that the FDCPA "applies only to debt collectors" as defined in the statute); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) ("Congress enacted the FDCPA in 1977 … to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers."). Given the Seventh Circuit's concern about "transform[ing] the FDCPA into an enforcement mechanism for matters governed by state law," *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 876 (7th Cir. 2015), it is important for courts presented with FDCPA claims to ensure that the defendant is properly alleged to be a "debt collector."

Section 1692a(6) provides several possible ways a defendant may qualify as a debt collector.  The operative complaint invokes two of those.  Doc. 73 at ¶¶ 6-7.  The first defines a debt collector as "any person … who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The second—which applies only where, as here, the plaintiff alleges a § 1692f(6) violation—defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails

in any business the principal purpose of which is the enforcement of security interests." *Ibid*. Each is considered in turn.

### A. "Regularly Collects or Attempts to Collect … Debts"

With respect to the "regularly collects or attempts to collect … debts" prong of the statutory definition of "debt collector," Hunte alleges that "Safeguard regularly attempts to collect directly, or indirectly, debts owed or due or asserted to be owed or due another, namely Chase Bank in this matter." Doc. 73 at ¶ 7. Merely parroting that prong of the statutory definition is not enough to allege that Safeguard is in fact a debt collector. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Pierce*, 818 F.3d at 279 (emphasizing, in the context of a tortious interference claim, that "calling [the defendant's] statements 'injurious' and stating that they damaged her business relationships does not make it so"); *Tierney v. Advocate Health and Hosps. Corp.*, 797 F.3d 449, 451-52 (7th Cir. 2015) (concluding, in the context of a Fair Credit Reporting Act claim, which requires that the defendant be a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), that the plaintiffs could not survive a Rule 12(b)(6) motion merely by tracking the statutory definition in their complaint); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more."). The question, then, is whether anything in the complaint plausibly supports the allegation that Safeguard regularly attempts to collect, whether directly or indirectly, debts due to Chase. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) ("We have interpreted the standard announced by the Supreme Court as requiring that the plaintiff give enough details about the subject-matter of the case to present a story that holds together.") (citation and internal quotation marks omitted). It does not.

Chase's letter to Hunte stated that Chase had learned that his property was "vacant" and asked that he "contact" Chase in the event its information concerning the vacancy was "incorrect and [he was] still living in or maintaining the property." Doc. 73 at ¶ 32.* Hunte's subsequent attempts to communicate with Chase—and its subsequent attempts to communicate with him—concerned whether the property was, in fact, abandoned. *Id*. at ¶¶ 33-35, 38-39; Doc. 73-1 at 23, 25. As for Safeguard, on which present inquiry appropriately focuses, the operative complaint alleges that its agents or employees threw Hunte's personal property into dumpsters, locked him out of his home, and winterized the plumbing, rendering him "effectively[] homeless." *Id*. at ¶¶ 49, 55-56. And as for Safeguard's communications with Hunte, the complaint alleges that Safeguard placed signs in the windows of his home that "stat[ed] that the Property had been

---

* Chase's letter contained a disclaimer stating: "This communication is an attempt to collect a debt and any information obtained will be used for that purpose." Doc. 73-1 at 21. The body of the operative complaint does not reference this disclaimer, and Hunte does not rely on it in his opposition brief, so he has forfeited any argument that the disclaimer speaks to whether Safeguard was acting as a "debt collector" within the meaning of § 1692a(6). *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."); *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."). Even putting aside Hunte's forfeiture, Chase's letter addressed only whether his property was vacant and did not mention anything regarding his mortgage debt; moreover, nothing in the complaint alleges any connection between the letter and Safeguard.

8

determined to be vacant or abandoned" and that also "conveyed information regarding the alleged debt … including the identity of the debt collector and the creditor." *Id*. at ¶¶ 50-51; *see* Doc. 73-1 at 31 ("Notice: This property has been determined to be vacant or abandoned. This information will be reported to the mortgage servicer … If this property is NOT VACANT or ABANDONED, please call your mortgage servicer, JPMorgan Chase Bank, N.A.").

The court will assume that Hunte's experience with Safeguard was a representative one, and therefore that Safeguard "regularly" does to others what it allegedly did to him. Doc. 82 at 10. But while the complaint alleges that Safeguard tried to dispossess Hunte of his home, it does not allege or give rise to a reasonable inference that Safeguard was doing so in order to collect a debt on Chase's behalf. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 677 (7th Cir. 2016) (emphasizing that "the *Twombly-Iqbal* pleading standards require the plaintiffs to cross the line from the possible violation to the plausible") (internal quotation marks omitted). Safeguard's actions (changing the locks, winterizing the plumbing, discarding Hunte's personal belongings) are what one does to secure a vacant home, not what one does to collect a debt. Likewise, Safeguard's signs pertain to the property's being deemed vacant and abandoned; they do not refer to Hunte's mortgage debt, let alone try to collect it. *See Bywater v. Wells Fargo Bank, N.A.*, 2014 WL 1256103, at *1, 5 (N.D. Ill. Mar. 24, 2014) (concluding that similar actions by a property preservation company, including "enter[ing] the property, chang[ing] the locks, and damag[ing] … personal items," did not make the defendants "debt collectors" under the "regularly collects or attempts to collect … debts" prong of § 1692a(6), even if the company's actions qualified it as a "debt collector" under the "enforcement of security interests" prong of the definition); *Gordon v. Bank of N.Y. Mellon Corp.*, 964 F. Supp. 2d 937, 948-49 (N.D. Ind. 2013) ("In this case … the alleged conduct that plaintiffs assert constitutes collection activity,

that defendants broke into plaintiffs' home, removed plaintiffs' personal belongs, and trashed plaintiffs' home, is not inherently associated with the collection of a debt.")

The court acknowledges that Hunte cites several decisions holding that property preservation companies (including Safeguard) were properly alleged to be debt collectors under the "regularly collects or attempts to collect … debts" prong of § 1692a(6). Those decisions are distinguishable. In *Simpson v. Safeguard Properties, LLC*, 2013 WL 2642143 (N.D. Ill. June 2, 2013), the five identical notes that Safeguard sent the plaintiff stated "'IMPORTANT[,]' 'PLEASE CALL[,]' 'PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER[,]' and 'WE ARE EXPECTING YOUR CALL TODAY.'" *Id*. at *1 (alterations in original). The phone number set forth in the notes belonged to the lender's loan counselors—"the same number as the one [the lender] listed … in the notice of default." *Ibid*. Thus, by contrast to Safeguard's communications with Hunte, which concerned only the property's apparent vacancy, the *Simpson* complaint plausibly alleged that the substance of the communication, reminding the plaintiff to be prepared to give her account number and providing the phone number of the lender's loan counselors, related to the plaintiff's debt, and thus plausibly suggested that Safeguard was attempting to help the lender collect the debt. *See also Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 201, 204 (3d Cir. 2012) (same, where the property preservation company "handed" the plaintiff a letter seeking "information … to assist Chase in 'resolv[ing]' a home mortgage loan that Chase alleged was 'past due'") (alteration in original); *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1144, 1149 (9th Cir. 1998) (holding that Western Union was a "debt collector" because it mailed a notification to the plaintiff instructing him to contact a Western Union phone operator, who then read the "following debt collection" message: "We have previously attempted to contact you regarding your eligibility for

the federal consolidation loan program. … [W]e have sent this telegram requesting that you telephone our office immediately … to discuss the advantages of refinancing your defaulted student loans … ."); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 822 (N.D. Ill. 2013) (where the defendant conceded that it was a "'debt collector' within the meaning of the FDCPA"); *Frazier v. U.S. Bank N.A.*, 2013 WL 1337263, at *1, 7-9 (N.D. Ill. Mar. 29, 2013) (holding that the plaintiff plausibly alleged that the mortgagee and its loan servicers—who "administered, managed, and/or ordered services to be performed for homes *securing loans* in delinquency, default, and/or foreclosure, including for Plaintiff's home"—were "debt collectors") (emphasis added). And in *Fressola v. Safeguard Properties, LLC*, 2017 U.S. Dist. LEXIS 125237 (N.D. Ill. Aug. 2, 2017), the court held only that the plaintiff's allegation that Safeguard "left a work order at the property, which stated … the purpose of defendant's 'visit' was to 'lock/winterize' the property, and provided a telephone number to contact defendant," was sufficient "to state a plausible claim that the defendant was acting *in an attempt to enforce a security interest*," which, as noted above and discussed below, is an altogether separate prong of the statutory definition of "debt collector." *Id.* at *14-16 (emphasis added); *see also Bywater*, 2014 WL 1256103, at *5 (same).

      B.      **"Enforcement of Security Interests"**

Hunte alleges in the alternative that Safeguard is a "debt collector"—though only for purposes of his § 1692f(6) claim—because "Safeguard's principal purpose is … the enforcement of security interests via the use of instrumentalities of interstate commerce." Doc. 73 at ¶ 6. This allegation merely parrots the "enforcement of security interests" prong of the statutory definition, and thus is insufficient on its own to survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678; *Pierce*, 818 F.3d at 279; *Tierney*, 797 F.3d at 451; *Brooks*, 578 F.3d at 581. And

11

even assuming that the complaint plausibly alleges that Safeguard's principal purpose is the enforcement of security interests, *see Fressola*, 2017 U.S. Dist. LEXIS 125237, at *10-11; *Bywater*, 2014 WL 1256103, at *5, the complaint does not allege anything giving rise to a reasonable inference that Safeguard accomplishes that purpose through "any instrumentality of interstate commerce or the mails." 15 U.S.C. § 1692a(6).

For example, the complaint alleges that a Safeguard agent or employee spoke with Hunte's neighbor to "convey[] information regarding an alleged debt," Doc. 73 at ¶¶ 45-46, but it does not describe the means of communication. As a result, even if the interaction with Hunte's neighbor is a "communication" within the meaning of § 1692a(2) (defining the term as "the conveying of information regarding a debt directly or indirectly to any person through any medium"), the complaint is silent about whether that interaction took place via the instrumentalities of interstate commerce or the mails, or, rather, in person. Safeguard's communications with Hunte himself are alleged to have occurred in person, with Safeguard's agents or employees physically present on Hunte's property. Doc. 73 at ¶¶ 50 (alleging that Safeguard placed signs in the windows of Hunte's home), 61 (alleging that "[a]gents and/or employees of Safeguard were on and in the Property without permission"), 77 (alleging that Safeguard's agents or employees accessed Hunte's property).

Pointing to ¶ 5 of the complaint—which alleges that Safeguard "markets its services to mortgage companies with delinquent and defaulted borrowers," and also that it "advertises field services that it provides to its client, and among these services are communicating with delinquent borrowers on behalf of mortgage companies, contacting mortgagors to request that the call mortgage companies, and reporting back to mortgage companies whether it has made contact with mortgagors and regarding the condition of mortgaged properties," Doc. 73 at ¶ 5—

12

Hunte contends that he has sufficiently alleged that Safeguard's services include "communicating with delinquent borrowers on behalf of mortgage companies, contacting mortgagors to request that they call mortgage companies, and reporting back to mortgage companies." Doc. 82 at 13. But the complaint does not allege that Safeguard *uses the instrumentalities of interstate commerce or the mails* in performing those services. And given the nature of Safeguard's alleged interactions with Hunte, which occurred exclusively in person rather than through the mails or instrumentalities of interstate commerce, it is not reasonable to infer that they do.

Consequently, although the court discussed that very issue with Hunte's counsel at the presentment hearing on Defendants' motions to dismiss the amended complaint, and although Hunte sought leave to further amend for the express purpose of addressing that issue, the second amended complaint still does not plausibly allege that Safeguard is a "debt collector" under the "enforcement of security interests" prong of § 1692a(6). The problem here is not merely that Hunte has failed to plead "facts that bear on the statutory elements of a[n FDCPA] claim"; rather, it is that Hunte's FDCPA claims are implausible because, as to Safeguard's interactions with Hunte, the operative complaint alleges only in-person interactions and gives no hint as to the use of the instrumentalities of interstate commerce or the mails. *Chapman v. Yellow Cab Coop.*, __ F.3d __, 2017 WL 5494238, at *1 (7th Cir. Nov. 16, 2017).

With the failure of both of Hunte's efforts to plead that Safeguard is a "debt collector," Hunte's FDCPA claim is dismissed.

## II.    State Law Claims

As noted, Hunte premises jurisdiction over his state law claims exclusively on the § 1367(a) supplemental jurisdiction. Doc. 73 at ¶ 1. Despite the court's having raised in its prior

13

opinion the initial complaint's failure to allege that the state law claims fall within the diversity jurisdiction, the second amended complaint does not allege the citizenship of Hunte or Safeguard, *id*. at ¶ 3 (alleging that Hunte is a "resident" of Illinois); *id*. at ¶ 4 (alleging that Safeguard is a Delaware corporation but remaining silent on the location of its principal place of business), and does not invoke the diversity jurisdiction. And despite Safeguard's arguing in support of its present motion that, if the court dismisses the FDCPA claim, it should exercise its discretion under § 1367(c)(3) to relinquish its jurisdiction over the state law claims, Doc. 79 at 12, Hunte's response does not argue that diversity jurisdiction lies over those claims, Doc. 82 at 10-11. Hunte therefore has forfeited any argument that his state law claims fall within the diversity jurisdiction. *See Firestone Fin. Corp*, 796 F.3d at 825 ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."); *G&S Holdings LLC*, 697 F.3d at 538 ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Domka v. Portage Cnty.*, 523 F.3d 776, 783 n.11 (7th Cir. 2008) ("[W]here a party raises a specific argument for the first time on appeal, it is waived even though the 'general issue' was before the district court.").

    Forfeiture applies even though the forfeited issue concerns subject matter jurisdiction. True enough, "[n]o party can waive or forfeit *a lack* of subject-matter jurisdiction, which [the court] must enforce even if everyone else has ignored it." *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (emphasis added, citation and internal quotation marks omitted); *see also Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) ("Jurisdictional *objections* cannot be forfeited or waived, of course, for this court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists.") (emphasis added, citation and internal quotation marks omitted); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010)

("[N]either the parties nor their lawyers may waive arguments that the court *lacks* jurisdiction.") (emphasis added). However, the *proponent* of subject matter jurisdiction, as with any party with the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *See Travelers Prop. Cas.*, 689 F.3d at 718 ("The court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists."); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("[A]rguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice."); *In re Littman*, 551 B.R. 355, 361 (N.D. Ill. 2015) (same); *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (same). And so here with Hunte's non-invocation of the diversity jurisdiction, which leaves only the supplemental jurisdiction under § 1367(a).

Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, "[a]s a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("[W]hen the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims."). This general rule has three exceptions: "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams*, 509 F.3d at 404; *see also RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

As with the initial complaint, none of the exceptions apply here. First, it remains true that Hunte would have one year under Illinois law to refile his state law claims in state court if the limitations period for any of those claims expired while this case was pending in federal court. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (citing 735 ILCS 5/13-217); *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (same); *Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 636-37 (Ill. 1997) (same). Second, this case is still at the pleading stage, Doc. 87 (staying discovery), and thus substantial federal judicial resources have not yet been committed to the state law claims. Finally, it is not apparent how the state law claims should be resolved. Accordingly, the court relinquishes its supplemental jurisdiction over Hunte's state law claims. *See Dietchweiler*, 827 F.3d at 631; *RWJ Mgmt. Co.*, 672 F.3d at 479-82; *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994).

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted. The FDCPA claims are dismissed and, as Hunte has had three opportunities to plead them, the dismissal is with prejudice. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818-19 (7th Cir. 2013) ("The Bank insists that the district judge abused his discretion by dismissing the complaint with prejudice rather than allowing it to try again. But in court, as in baseball, three strikes and you're out."); *Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (affirming dismissal with prejudice after the "plaintiffs had three opportunities to identify a relevant market in which the NCAA allegedly committed violations of the Sherman Act"). The state law claims—which may well have merit, and which Hunte could have long since pursued had he not spent months trying in vain to squeeze this case into an ill-fitting FDCPA suit, *see Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007) (observing that the FDCPA "does not so much

16

as hint at being an enforcement mechanism for other rules of state and federal law")—are dismissed for want of subject matter jurisdiction, and Hunte remains free to re-file those claims in state court.

November 27, 2017

_____
United States District Judge